# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# AT LOUISVILLE

**UNITED STATES OF AMERICA,**
                          **Plaintiff/Appellee**

**v.**                                    **Criminal Action No.**
                                          **3:04CR59-J**

**TONYA V. RUTTLEY,**
                          **Defendant/Appellant**

## OPINION

This matter presents Tonya Ruttley's appeal from the decision of the United States
Magistrate Judge finding her guilty on a charge of theft.  Ms. Ruttley contends that the trial court
improperly admitted hearsay and irrelevant evidence, and that no reasonable fact-finder could
have found her guilty on the evidence presented.  For the reasons set out below, this Court finds
no error in the trial proceedings.

The United States sought to show that while riding in a taxi van with the victim, the
defendant and her female companion (Ms. Glenn) took the victim's wallet, that the two women
then entered a private club, and that after removing the money from the wallet, they disposed of
the wallet in the women's restroom.   The United States did not present the victim's testimony,
but relied on the testimony of the taxi van driver (Spellman), the doorkeeper at the club
(Stiverson), and a military police officer (Raptigan).

The defendant/appellant argues on this appeal that the trial court improperly admitted
evidence on eighteen different occasions.  We review evidentiary rulings under the "abuse of

1

discretion" standard. <u>U.S. v. Schreane</u>, 331 F.3d 548, 564 (2003), cert. denied, 540 U.S. 973, 124 S.Ct. 448, 157 L.Ed.2d 323 (2003).  Abuse of discretion occurs when there is a "definite and firm conviction that the court below committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant factors." <u>Schreane</u>, 331 F.3d at 564 (quoting <u>Super Sulky, Inc. v. U.S. Trotting Ass'n</u>, 174 F.3d 733, 740 (6th Cir.1999)).

Most of the items (14 of the 18) are challenged on grounds that they are hearsay not within any recognized exception.  In fact, however, almost all of these items are simply not within the definition of hearsay.  Hearsay is a statement (1) made by a declarant who is not present in court (2) offered in court to prove the truth of the matter asserted in the statement itself.  Fed.R.Evid. 801.  Significantly, if the statement – even if made out of court –  is not presented for the purpose of establishing its own truth, it is not hearsay.

Under this test, a number of the pieces of evidence to which appellant objected are simply not hearsay at all.  For example, Mr. Spellman's testimony that the alleged victim said his name was Ayoub was not offered by Mr. Spellman to prove that the victim's name was *actually* Ayoub [Tr. 5].  Mr. Spellman was available to testify under oath, subject to cross-examination as to everything involved in this testimony, i.e., that the witness heard his passenger say that his name was Ayoub.   Thus, the statement was not hearsay.

By the same token, Mr. Spellman could properly report that he took action because he heard the alleged victim say that his wallet had been stolen.  It did not matter whether it was *true* that the wallet was stolen, or whether it was *true* that the victim believed defendant and her companion had stolen his wallet..  What mattered for evidentiary purposes was that Spellman claimed to have heard such statements and took action in conformity with his understanding of

2

the statements.  Similarly, it was not hearsay when Mr Raptigan testified that he arrived on the

scene because of a dispatch regarding a possible larceny – this was not offered to show that a

larceny *had*, in fact, occurred, but to explain why Raptigan was there and what his state of mind

was at the time.

Stiverson's testimony that someone told them that two women who just came in

"supposedly" stole a wallet was not, contrary to appellant's assertion, offered to prove the matter

stated.  That is, it was not offered to prove that Ms. Ruttley stole a wallet, but to explain the

participants' motivations in calling the Military Police and searching the restroom.  The same

reasoning applies to Raptigan's testimony concerning a third party's belief that a wallet had been

stolen, and it explains the trial court's explicit statement: "{I]t's not going to be considered ... to

prove the truthfulness of what Mr. Spellman told Mr. Raptigan, only that it was reported to Mr.

Raptigan and that formed the basis for his later actions as military police officer."  Tr. 40.

Another group of claims raised on this appeal concerns statements made by the defendant

or her co-conspirator.  Fed.R. Evid. 801(d)(2)(A) exempts from the definition of hearsay a

"party's own statement."  Thus, the evidence concerning reported statements of Ms. Ruttley

were not hearsay.  Similarly, Fed.R.Evid. 801(d)(2)(E) exempts from the definition of hearsay

any "statement by a coconspirator of a party during the course and in furtherance of the

conspiracy."  The elements that trigger this exception are (1) there was a conspiracy, (2) the

defendant was a member of the conspiracy, and (3) the statement was made during and in

furtherance of the conspiracy.  United States v. Clark, 18 F.3d 1337, 1341 (6th Cir. 1994).  In this

case, the testimony of the cab driver and the door keeper regarding the two women's behavior

provides the necessary independent corroborating evidence, such that testimony regarding the

statements of the co-conspirator are admissible under the exception.

Ms. Ruttley presents as a hearsay matter her objection to Raptigan's testimony concerning the amount of money recovered from each woman and what happened to the money thereafter. However, lack of precise recollection does not equate to lack of personal knowledge. There is nothing to suggest that Raptigan was not testifying to matters concerning which he had personal knowledge. This Court cannot agree that the hearsay rule is implicated in any way.

Appellant argues that Mr. Spellman's testimony that Ms. Ruttley put her hand on the shirt pocket where he kept money [Tr. 10] was irrelevant. The United States contends that this evidence is relevant to show that she wanted money and intended to get it while in the van. The record reflects that counsel did not object to the questions or the resulting testimony, but subsequently, counsel stated, "Judge, I want to make a motion to strike his previous testimony as not being relevant or probative." Tr. 11. The trial judge responded that "striking" the testimony was unnecessary, given that it was a bench trial rather than a jury trial. In making his decision, the trial judge never mentioned or otherwise relied on the testimony, and he affirmatively rejected the government's contention that it had proved Ms. Ruttley and Ms. Glenn needed money [Tr. 66-67]. It is clear that the trial court considered the "hand on shirt pocket" testimony irrelevant and it played no part in the decision.

Appellant objects to Stiverson's testimony that defendant and her companion appeared nervous. She states that there was "no foundation" for the testimony. It appears that appellant's objection goes to weight rather than admissibility. In any event, however, Ms. Stiverson presented a clear basis for her testimony in that the two women were "regulars" at the club, and Ms. Stiverson was able to compare their behavior that night with their usual behavior [Tr. 29,

4

36]..  As she was aware of their usual demeanor, she was in an excellent position to testify that

their behavior and demeanor was out of the ordinary.

Another somewhat puzzling "foundation" objection concerns Raptigan's testimony that

Ms. Ruttley's companion "got a pretty big attitude" with him.  Again, it appears that the actual

thrust of appellant's argument is that the testimony was not valuable rather than that it was

inadmissible.  Raptigan testified concerning what he observed and his testimony was not

objectionable.

Appellant appears to raise an objection based on Miranda v. Arizona, 384 U.S. 436

(1966);  however, she has not identified any statements elicited by official questioning.

Accordingly, it is not necessary to conduct any analysis of the point at which Ms. Ruttley was

detained, because there is no evidence that would be subject to suppression if a Miranda

violation occurred.

Finally, appellant objected to Raptigan's testimony that he asked the victim whether the

wallet discovered in the ladies' room was his, and that the victim confirmed that it was his

wallet.  The United States sought to justify this testimony on grounds of the "present sense

impression" or "excited utterance" exceptions to the hearsay rule.  Fed. Rule of Evid. 803(1).

In order for a statement to be admitted as an "excited utterance," three elements must be

satisfied:  (1) There must be an event startling enough to cause nervous excitement; (2) the

statement must be made before there is time to contrive or misrepresent; and (3) the statement

must be made while the person is under the stress of the excitement caused by the event. Haggins

v. Warden, Fort Pillow State Farm, 715 F.2d 1050, 1057 (6th Cir.1983), cert. denied, 464 U.S.

1071, 104 S.Ct. 980, 79 L.Ed.2d 217 (1984).  The length of time between the event and the

5

statement is critical.  In the case of this testimony, it is not possible to say that trustworthiness was assured by spontaneity, such that cross-examination of Mr. Ayoub would be superfluous. See, United States v. Arnold, 410 F.3d 895 (2005).   Thus, the government's attempt to use the "excited utterance" exception cannot succeed.

A "present sense impression" is "a statement describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter." Fed.R.Evid. 803(1).  The prosecutor contends that the statement "that's my wallet" was made by Mr. Ayoub while he was perceiving the wallet, such that it fits within this exception.  It is clear that if this exception to the hearsay rule is not strictly applied, it could well swallow the hearsay rule.  Furthermore, even some matters that clearly fit within the Rule 803 exceptions are barred from use because of the commands of the constitution.   The U.S. Supreme Court recently ruled that out-of-court statements that are "testimonial" and made by a witness not present at trial are admissible only if the declarant is unavailable and the defendant had a prior opportunity to cross-examine. Crawford v. Washington, 541 U.S. 36, ----, 124 S.Ct. 1354, 1374, 158 L.Ed.2d 177 (2004).  The court stated that an "accuser who makes a formal statement to government officers bears testimony in a sense that a person who makes a casual remark to an acquaintance does not." Crawford at 1364.

Thus, both spontaneity and non-testimonial nature of the statement are essential if it is to be relied upon as evidence.  Mr. Ayoub's alleged statement regarding the wallet certainly does not appear to be a "formal statement" in any sense, and it seems to have been spontaneous. Nonetheless, the importance of the confrontation clause is such that it is hardly surprising that the trial court, obviously acting out of an abundance of caution,  avoided any reliance on this

6

testimony.  Instead, the trial judge noted Raptigan's statement that he saw in the wallet something bearing Ryan Ayoub's name, and he placed no reliance on the challenged statement. This Court finds no error in the trial court's treatment of Mr. Raptigan's testimony.

In addition to her complaints regarding specific pieces of testimony, Ms. Ruttley contends that she was denied her constitutional right of confrontation by being convicted without the testimony of the victim.  As discussed above, there is no question that the right of confrontation is firmly ensconced in American criminal law; however, that right exists primarily to guarantee cross-examination, such that an individual is not convicted on the basis of un-cross-examined *testimony*.  While appellant has set out questions she would have asked Mr. Ayoub if he had been present, it is important to bear in mind that the confrontation clause concerns testimony that *is* used, not testimony that might have been elicited if the opportunity had been offered.  Neither was there any burden on the United States to show Mr. Ayoub's unavailability: "[U]navailability analysis is a necessary part of the Confrontation Clause inquiry only when the challenged out-of-court statements were made in the course of a prior judicial proceeding." White v. Illinois, 502 U.S. 346, 354, 112 S.Ct. 736, 116 L.Ed.2d 848 (1992)

In this case, no testimony or any other statement of Mr. Ayoub was used to support the guilty verdict.  Rather, Mr. Spellman testified from personal knowledge (subject to cross-examination) that he saw his passenger, who had claimed his name was Ryan Ayoub,  hold up a wallet containing money and show it to Ms. Ruttley and Ms. Glenn.  Ms. Stiverson testified from personal knowledge (subject to cross-examination) that she was familiar with the two women, knew their usual demeanor, that she observed them appearing nervous and rushed as they moved from the van to the club, and that she saw them attempting to stuff something into a purse before

hurrying to the ladies' room.  She also testified from personal knowledge (subject to cross-examination) that she found a wallet in a ladies room trash receptacle shortly thereafter.  Mr. Ratigan testified from personal knowledge (and subject to cross-examination) that he examined the wallet and found that it contained no money, but that it did contain a card issued to Ryan Ayoub.

      As the trial court noted, there was no way for the wallet (filled with money) to move to the ladies room (where it was found empty of money) without the assistance of Ms. Ruttley and/or Ms. Glenn.  The testimony of Mr. Spellman and Ms. Stiverson about the behavior and actions of the two women was more than sufficient to show that they acted in concert and with an awareness of guilt.  There was more than sufficient basis for a fact-finder to determine that Ms. Ruttley was guilty of theft.

      An order affirming the judgment below has this day entered.